# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY 2000 SESSION



FILED

March 17, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. E1999-00274-CCA-R3-CD |
| Appellee, | ) | |
| | ) | BLOUNT COUNTY |
| VS. | ) | |
| | ) | HON. D. KELLY THOMAS, JR. |
| DOUGLAS BRYAN BORUFF, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Child Rape) |


**FOR THE APPELLANT:**

HUBERT D. PATTY
131 E. Broadway
P. O. Box 5449
Maryville, TN 37802-5449


**FOR THE APPELLEE:**

PAUL G. SUMMERS
Attorney General and Reporter

MICHAEL J. FAHEY II
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

MICHAEL L. FLYNN
District Attorney General

KIRK E. ANDREWS
EDWARD P. BAILEY, JR.
Asst. District Attorneys General
363 Court Street
Maryville, TN 37804-5906


OPINION FILED: _____


AFFIRMED


JOE G. RILEY, JUDGE

## O P I N I O N

Defendant, Douglas Bryan Boruff, appeals from his conviction of child rape by a Blount County jury. He was sentenced to a term of 23 years. In this appeal as of right, he raises the following issues for our review:

1. Whether the evidence was sufficient to support the conviction;

2. Whether the trial court erroneously admitted hearsay evidence;

3. Whether the trial court erroneously failed to charge lesser-included offenses; and

4. Whether the trial court erred by not granting a new trial based upon newly discovered evidence.[1]

Upon our review of the record, we find no reversible error and **AFFIRM** the judgment of the trial court.

## FACTS

The victim was three years old and had been adopted by her grandmother, Judy Lumpkin. The victim resided with Lumpkin as did Angela Burger (the victim's natural mother and the daughter of Lumpkin), Burger's two other young children and the defendant, who was Burger's boyfriend.

On May 1, 1998, at approximately 10:00 a.m., Lumpkin gave the victim a bath. The victim was normal and made no complaint of pain.

The defendant was not working on this date and consumed a six-pack of beer by noon. Shortly after noon, the defendant went into the bedroom to take a nap. The victim and her younger brother were also in the bedroom. Lumpkin observed the victim "belly to belly" on top of the defendant. Shortly thereafter,

---

[1]Although the defendant listed other issues for review, they were not addressed in the argument portion of his brief; there was no citation to the record; and there was no citation of authority. We consider those issues waived. *See* Tenn. R. App. P. 27(a)(7). Further, we find no plain error as to these issues. *See* Tenn. R. Crim. P. 52(b).

2

the victim left the bedroom and sat with Lumpkin in the living room. A few minutes later the victim went back into the bedroom.

After being in the bedroom for approximately ten minutes, the victim came out of the bedroom crying and claiming that the defendant had hurt her "cootchie" with his hand and finger. Lumpkin examined the victim in the bathroom and observed that her vaginal area was "real red." Lumpkin confronted the defendant, who denied any wrongdoing and contended he was asleep.

Approximately forty minutes later Lumpkin's friend, Sharon Vilchez, entered the residence. The victim, who would ordinarily run to and hug Vilchez, appeared "real upset, real nervous and scared." The victim pulled down her underwear and told Vilchez that the defendant had "touched my cootchie." While the victim was clinging to the leg of Vilchez, Vilchez confronted the defendant in the bedroom. Vilchez asked the victim to explain what had occurred . According to Vilchez, the victim "put her hand on her vagina, and she said he put his finger in my cootchie."

Lumpkin and Vilchez subsequently carried the victim to the sheriff's office to report the incident. After reporting the incident, they ate at a restaurant where the victim used the restroom. At that time the victim experienced pain in her vaginal area and cried.

The victim was examined by a pediatrician, Dr. Heather Edgley, at approximately 6:30 p.m. on the same date. Dr. Edgley testified that the victim had experienced a torn labial adhesion with the top layer of skin pealed off. This injury was very painful and not self-inflicted. In her opinion a blunt object, consistent with a finger, penetrated the child causing the injury. According to Dr. Edgley, the injury was "very fresh" and more than likely occurred within twelve hours of the examination.

The defendant was interviewed by investigators from the sheriff's department. He stated that he had drunk a six-pack of beer that morning and went to sleep in the bedroom. He conceded that at one point the victim had been on him while he was trying to sleep; however, he had no recollection of doing anything inappropriate to the victim. When asked if it was possible that something occurred in view of his consumption of six beers and falling asleep, he stated, "I don't want to say that it was possible that something coulda (sic) happened because I know that it could have, but I don't wanna (sic) believe that, you know."

Angela Burger testified for the defense and stated that she, not Lumpkin, had given the victim a bath that morning. Burger acknowledged that the victim came out of the bedroom crying and saying, "her cootchie was hurting" and that "Bryan hit me down there."

The defendant testified that he was asleep in the bedroom and noticed at one point that the victim was on his chest. The victim then left, and he went back to sleep. His next recollection was being accused of wrongdoing. The defendant denied that he ever touched the victim in the genital area.

Based upon this evidence, the jury convicted the defendant of rape of a child.

## SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence was insufficient to justify his conviction of child rape. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct

and circumstantial evidence. <u>State v. Brewer</u>, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>State v. Tuttle</u>, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The trier of fact, not his Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In <u>State v. Grace</u>, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>Grace</u>, 493 S.W.2d at 476.

Rape of a child is the "unlawful sexual penetration of a victim by the defendant... if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" includes "any...intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's...body..." Tenn. Code Ann. § 39-13-501(7).

5

Viewing the evidence in a light most favorable to the state, as we must, the evidence is more than sufficient to support the verdict. The victim was unquestionably under thirteen (13) years of age, and the medical proof unquestionably established penetration. The victim had no complaints of pain prior to the incident. Immediately after the incident, the victim exited the bedroom where defendant was; she was crying; she was complaining of vaginal pain; and she alleged the defendant had hurt her "cootchie." A rational trier of fact could reasonably conclude from the evidence that the defendant digitally penetrated the three-year-old victim's genital opening.

This issue is without merit.

## HEARSAY EVIDENCE

Defendant contends the trial court erred in allowing Judy Lumpkin and Sharon Vilchez to testify about the victim's statements. Specifically, defendant contends such testimony was inadmissible hearsay. We respectfully disagree.

Firstly, we note that counsel failed to make a contemporaneous hearsay objection to Lumpkin's testimony. Although defendant made a general objection to hearsay testimony prior to trial, the trial court requested that the proper objections be made during trial. The failure to make a contemporaneous objection waives this issue. *See* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995). Nevertheless, we will address the issue on its merits.

The three-year-old victim's statements to Lumpkin were made immediately after the event when the victim was crying and in pain. Although the victim's statements to Vilchez were made approximately forty minutes after the event, Vilchez described the child as "real upset, real nervous and scared" at the time. Clearly, the statements qualified as excited utterances under Tenn. R. Evid. 803(2).

6

The statements were made after a startling event; the statements related to the startling event; and the statements were made while the victim was under the stress or excitement from the event. State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997).

This issue is without merit.[2]

## LESSER-INCLUDED OFFENSES

Defendant contends the trial court erred in failing to instruct the jury on lesser-included offenses. Defendant does not suggest which lesser-included offense or offenses should have been charged. We find no error in the failure to charge lesser-included offenses in this case.

Child rape requires "unlawful sexual penetration" of a child less than thirteen (13) years of age. Tenn. Code Ann. § 39-13-522(a). Aggravated sexual battery requires "unlawful sexual contact" with a child less than thirteen (13) years of age. Tenn. Code Ann. § 39-13-504(a)(4). Aggravated sexual battery is clearly a lesser-included offense of child rape. See State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).[3]

However, that does not end our inquiry. We must now determine whether the trial court erred in failing to charge aggravated sexual battery or any other potential lesser-included offenses. Burns establishes a two-part analysis. Firstly, evidence must exist that reasonable minds could accept as to the lesser-included offense. Burns, 6 S.W.3d at 469. Evidence must be viewed liberally in the light most favorable to the existence of the lesser-included offense. Id. Secondly, the

---

[2]We also note that a defense witness, Angela Burger, testified on direct examination to similar statements made by the victim immediately upon exiting the bedroom.

[3]Clearly, aggravated sexual battery establishes a less serious harm or risk of harm to the victim under part (b) of the Burns test. It may also be a lesser-included offense under part (a) of the Burns test; however, we need not reach this issue.

7

evidence must be legally sufficient to support a conviction for the lesser-induded offense. *Id.*

Child rape has two essential elements: (1) unlawful sexual penetration; and (2) a victim less than thirteen (13) years of age. Tenn. Code Ann. § 39-13-522(a). It is undisputed the victim was less than thirteen (13) years of age. It is further undisputed, pursuant to the medical testimony, that the victim was sexually penetrated. As previously stated, "sexual penetration" is any intrusion, however slight, into the genital opening. Tenn. Code Ann. § 39-13-501(7). We do not read Burns as requiring an instruction on a lesser-included offense if there is no evidence that reasonable minds could accept as to the lesser offense, as opposed to the greater. *See generally*, State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999).

We, therefore, conclude the trial court did not err in failing to charge aggravated sexual battery or any other potential lesser-included offenses. This issue is without merit.

## NEWLY DISCOVERED EVIDENCE

Finally, defendant contends the trial court erred in not granting a new trial on the basis of newly discovered evidence. Again, we disagree.

In seeking a new trial based on newly discovered evidence, there must be a showing that defendant and his counsel exercised reasonable diligence in attempting to discover the evidence, and that neither the defendant nor his counsel had knowledge of the alleged newly discovered evidence prior to trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). In addition, there must be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. Nichols, 877 S.W.2d at

8

737; State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995); Caldwell, 977 S.W.2d at 117.

After the trial, defendant filed the affidavit of Sherry Inman which stated that Inman was at Lumpkin's residence on the morning in question. She further stated that the victim was playing on a swing set, began crying and "had quite a bit of blood on her." The affidavit was presented at the motion for new trial. Lumpkin testified at the hearing that Inman had never been to her home, and no injury occurred to the victim on the swing set that morning. The trial court denied relief noting that Inman could have been discovered prior to trial, and there was no indication where the alleged blood was located on the victim. In short, the trial court found that the statements contained in the affidavit were insufficient to establish that the result of the trial would likely be different.

The trial court heard the testimony of Lumpkin and was in a position to judge her credibility and demeanor. Inman did not testify, and her statements were submitted by way of an affidavit. The trial court concluded Inman could have been discovered prior to trial, and the statements were insufficient to justify the granting of a new trial. We find no abuse of discretion by the trial court in reaching this conclusion.

This issue is without merit.

## CONCLUSION

Based upon our examination of the entire record, we conclude the trial court committed no reversible error. The judgment of the trial court is, therefore, **AFFIRMED**.

9

_____
**JOE G. RILEY, JUDGE**


**CONCUR:**


_____
**THOMAS T. WOODALL, JUDGE**


_____
**JAMES CURWOOD WITT, JR., JUDGE**